**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO.  04-11** |
| **LOVELLE LANG** | **SECTION "L"** |

**ORDER & REASONS**

Before the Court is Petitioner Lovelle Lang's *pro se* Motion for a Sentence Reduction under 18 U.S.C. § 3582(c)(1)(A)(i). R. Doc. 351. The government opposes the motion, R. Doc. 357, and the Defendant has filed a reply, R. Doc. 360. Having considered the parties' arguments and the applicable law, the Court now rules as follows.

## I.        BACKGROUND

On March 14, 2005, a jury in the Eastern District of Louisiana found Defendant Lovelle Lang guilty of nine counts related to a series of carjackings in which he took part in the fall of 2003. R. Doc. 153. Of the sixteen counts naming Mr. Lang tried from a superseding indictment, the jury convicted him of the following: Count 1: Conspiracy to Commit Carjacking, Count 2: Conspiracy to Discharge Firearms in a Crime of Violence, Count 5: Carjacking, Count 6: Using or Carrying a Firearm in a Crime of Violence, Count 11: Carjacking, Count 12: Brandishing a Firearm in a Crime of Violence, Count 13: Carjacking, Count 14: Discharging a Firearm in a Crime of Violence, and Count 16: Possession of a Firearm by a Convicted Felon. R. Doc. 153-1.

On January 25, 2006, Mr. Lang was sentenced to a total of 848 months—more than 70 years—on these counts. R. Doc. 205. He received 60 months for Count 1, 188 months for Count 2, 180 months for Counts 5, 11, and 3, and 120 months for Count 16. The terms of imprisonment as to counts 1, 2, 5, 11, 13, and 16 were to run concurrently with each other, for a total of 188

1

months of incarceration. *Id.* For Count 6, Lang received a 60-month term of imprisonment, to run consecutively to all other counts. Finally, Lang received a sentence of 25 years of imprisonment each for Counts 12 and 14, with these sentences running consecutively to each other and all other counts. *Id.*

Defendant has served just under 20 years in prison, and he is currently incarcerated at the Federal Correctional Complex in Pollock, Louisiana ("FCC Pollock"). R. Doc. 351 at 6. Bureau of Prisons ("BOP") records provided by the Defendant show that, accounting for the time he has already served and the good time credits he has accrued, he has a projected release date of February 19, 2064. R. Doc. 351-1 at 2. On that date, Mr. Lang will be 89 years old.

## II.     PRESENT MOTION

On June 12, 2023, Mr. Lang filed the instant *pro se* motion for compassionate release seeking a reduction in his sentence pursuant to 18 U.S.C. Section 3582(c)(1)(A)(i). R. Doc. 351. Mr. Lang argues that extraordinary and compelling circumstances warrant a reduction in his sentence because his case involves the "stacking" of consecutive mandatory minimum sentences under 18 U.S.C. § 924(c)(1)(C)—a practice that Congress has since eliminated. R. Doc. 351 at 8. Defendant argues that, if he were sentenced today on the same counts, he would face a much lower sentence. *Id.* Specifically, Defendant argues, the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194 ("First Step Act") eliminates escalating mandatory minimum sentences for defendants without prior § 924(c) convictions. *Id.* As a result, the mandatory minimums that he faced would be reduced from 55 years to 25 years. *Id.*

Mr. Lang also argues that further incarceration would be "greater than necessary to serve the purposes of punishment," and that he is far different from the person who was sentenced 20

years ago. *Id.* at 9. He argues that he has made significant efforts toward rehabilitation, such as completing over 2,000 hours of programs offered by the prison and over 1,400 hours of vocational training. *Id.* He states that he has had no history of misconduct at the facility where he is incarcerated, and that he has had no incident reports in 120 months. *Id.* He avers that, upon release, he will reside with his brother and plans to work for his brother's transportation firm, Lang Transportation LLC. *Id.* at 10.

The Government opposes Mr. Lang's motion, arguing that the Petitioner has failed to establish extraordinary and compelling circumstances that would justify a sentence reduction. R. Doc. 357. The Government argues that, because the changes to 18 U.S.C. § 924 are not retroactive, the changes to mandatory minimums enacted by the First Step Act "explicitly do not apply to him." *Id.* at 3. Because Congress declined to make the amendment retroactive, the Government argues, Mr. Lang cannot demonstrate extraordinary reasons for a sentence reduction. *Id.* Further, the Government argues, such a reduction in Mr. Lang's case would be inconsistent with the recent Fifth Circuit decision in *United States v. Escajeda*, 58 F.4th 184, 187 (5th Cir. 2023). *Id.* at 4. In that case, the Government argues, the Fifth Circuit "clarified that prisoners 'can seek relief under § 3582 only when they face some extraordinarily severe exigency not foreseeable at the time of sentencing, and unique to the life of the prisoner.'" *Id.* (citing *Escajeda*, 58 F.4th at 187). As the possibility of changes in sentencing law are "far from extraordinary or unforeseen," the Government reasons, a nonretroactive change in sentencing law cannot constitute "an extraordinary and compelling reason" sufficient to warrant compassionate release. *Id.*

III. **LAW & ANALYSIS**

**A.  The First Step Act and Section 924(c) Stacking**

The First Step Act, passed in 2018, is "[m]onumental in that its changes to sentencing calculations, mandatory minimums, good behavior credits and other parts of our criminal laws led to the release of thousands of imprisoned people whom Congress and the Executive believed did not need to be incarcerated." *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020). At the same time, it is "[i]ncremental, in that, rather than mandating more lenient outcomes, it often favor[s] giving discretion to an appropriate decisionmaker to consider leniency." *Id.*

For prisoners with lengthy sentences for firearm crimes, like Mr. Lang, the First Step Act enacted two relevant changes to federal law: it ended the practice of "stacking" certain mandatory minimums related to firearm charges, and it made it possible for incarcerated defendants to pursue compassionate relief on their own motion rather than relying on the BOP to petition on their behalf. *United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020).

Regarding the changes in how "stacked" sentences are calculated, Section 924(c) provides for mandatory minimum terms of imprisonment whenever a firearm is used or possessed during and in relation to a federal crime of violence. 18 U.S.C. §924(c). At the time of Mr. Lang's conviction, 18 U.S.C. § 924(c) included a "stacking" provision that required a district court to impose consecutive sentences of 25 years' imprisonment for "second or subsequent" convictions of the statute, even if those convictions occurred at the same time as a defendant's first conviction for violating the statute. This "stacking" provision had significant implications for Mr. Lang because he had three § 924(c) convictions in the same indictment. As a result, at the time of sentencing, Mr. Lang faced a mandatory minimum sentence of 55 years on those counts alone—60 months on the first (Count 6), and 25 years on the each of the other two counts (Counts 12 and 14).

The First Step Act amended § 924(c) to ensure that stacking applied only to defendants who were truly recidivists. Under the First Step Act's new framework, only a defendant who has a prior final conviction under § 924(c) is subject to the escalating mandatory minimum sentences for a subsequent § 924(c) conviction. First Step Act, § 403(a) (codified at 18 U.S.C. 924(c)(1)(C)). Because Mr. Lang received each of his firearm convictions at the same time, before any one conviction was final, if he were sentenced today the applicable § 924(c) mandatory consecutive minimums in his case would drop from 55 years to 25 years.

The First Step Act also brought major changes to 18 U.S.C. § 3582(c)(1)(A), which governs compassionate release motions for federal defendants. Prior to the First Step Act, defendants could not file their own motions for sentence reductions or compassionate release. Only the Director of the BOP, acting on behalf of a prisoner, could move for this relief. Under that framework, however, "the BOP Director rarely did so." *United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019) (citing Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice)).

The First Step Act amended the statute governing compassionate release so that defendants could petition district courts directly after first exhausting their administrative remedies. Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018). 18, United States Code § 3582(c)(1)(A), now provides:

> The court may not modify a term of imprisonment once it has been imposed except . . . upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . .

18 U.S.C. § 3582(c)(1)(A).

The requirement that a defendant file a request with the BOP before filing a motion in federal court is a "mandatory claim-processing rule." *United States v. Franco*, 973 F.3d 465, 468 (5th Cir. 2020). Accordingly, the Court will briefly address whether Mr. Lang has exhausted his administrative remedies before turning to the merits of his argument.

### 1. *Exhaustion of Administrative Remedies*

Defendant attaches to his motion a copy of his June 23, 2022 request to D. Baysore, the warden of FCC Pollock, for compassionate release. R. Doc. 351-2 at 2. The Government does not contest that Mr. Lang has met the exhaustion requirement, noting that the "BOP has confirmed that . . . Lang has exhausted his administrative remedies[.]" R. Doc. 357 at 5. Because Mr. Lang has exhausted his administrative remedies as is required by §3682(c)(1)(A), his present motion is timely and the Court turns to the merits of his "extraordinary and compelling" argument.

### 2. *Extraordinary and Compelling Reasons*

A court may reduce a defendant's term of imprisonment only if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Section 3582(c)(1)(A) further provides that any reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." The Court will provide some context for the case law and state of the upcoming amendments to the Sentencing Guidelines before analyzing Mr. Lang's claims.

Shortly after the First Step Act was enacted in December 2018, the Sentencing Commission lost its quorum when multiple members left the Commission. U.S. Sentencing Commission, "Commission Regains a Quorum for the First Time in Three Years," Press Release, Aug. 5, 2022,

https://www.ussc.gov/about/news/press-releases/august-5-2022. Due to the lack of quorum, the Sentencing Commission could not amend sentencing guidelines or issue policy statements for more than three years. *Id.* As a result, despite the material changes Congress made to compassionate release procedures in the First Step Act, the Sentencing Commission could not update its § 1B1.13 policy statement on compassionate release. For the same reason, since 2018, a portion of the policy statement has squarely contradicted § 3582(c)(1)(A) as amended. For example, the policy statement as it appears today continues to plainly provide that a term of imprisonment may be reduced only upon a motion by the Director of the Bureau of Prisons. U.S.S.G. 1B1.13.

This discrepancy led to uncertainty among district courts as to whether § 1B1.13 was an applicable policy statement for motions filed by prisoners like Mr. Lang. *See e.g.*, *United States v. Reed*, 464 F. Supp. 3d 854, 858 (E.D. La. 2020). In 2021 the Fifth Circuit clarified that it was not applicable, because the text of the policy statement—which had last been amended in November 2018, before the First Step Act was passed the next month—referred only to those petitions filed "upon motion of the Director of the Bureau of Prisons." *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021). The Circuit concluded that district courts have full discretion to define "extraordinary and compelling" and were not bound by the policy statement § 1B1.13 or its commentary when addressing inmate's motions under § 3582. *Id*. While other circuits typically agreed that district judges had discretion to determine what constituted "extraordinary and compelling," *see e.g. United States v. Aruda,* 993 F.3d 797 (9th Cir. 2021) (per curiam); *United States v. McGee*, 992 F.3d 1035, 1050–51 (10th Cir. 2021), a circuit split developed on the specific question at issue here: whether or not mandatory 924(c) stacking could constitute "extraordinary

and compelling reasons" for a sentence reduction. *See United States v. Andrews*, 12 F.4th 255 (3d Cir. 2021) (no), *United States v. Jarvis*, 999 F.3d 442 (6th Cir. 2021) (no), *United States v. Thacker*, 4 F.4th 569 (7th Cir. 2021) (no), *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020) (yes), *United States v. Maumau*, 993 F.3d 821 (10th Cir. 2021) (yes). The Fifth Circuit has not addressed the issue.

### 3. Sentencing Guidelines Effective November 1, 2023

On August 5, 2022, the Sentencing Commission regained a quorum. *See* U.S. Sentencing Commission, "Commission Regains a Quorum for the First Time in Three Years," *supra*. On April 27, 2023 the Sentencing Commission submitted to Congress proposed amendments to the Sentencing Guidelines, which will be effective on November 1, 2023. U.S. Sentencing Commission, "Adopted Amendments," Apr. 27, 2023, available at https://www.ussc.gov/guidelines/amendments/adopted-amendments-effective-november-1-2023. These amendments are directly responsive to the First Step Act and the circuit split regarding 924(c) stacking that has developed since 2018. *Id.*

As amended, §1B1.13 includes a new ground for compassionate release for certain defendants who are serving sentences that have been rendered "unusually long" by an intervening change in the law. As of November 1, 2023 the text of § 1B1.13 will read, in relevant part: "Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof . . .

(6) UNUSUALLY LONG SENTENCE.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is

filed, and after full consideration of the defendant's individualized circumstances."

*Id.* The commentary to the amendments explicitly states that "[t]he amendment agrees with the circuits that authorize a district court to consider nonretroactive changes in the law as extraordinary and compelling circumstances warranting a sentence reduction . . ." U.S.S.G., Amendments to the Sentencing Guidelines, Unofficial Text and Commentary, April 27, 2023, https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202305_RF.pdf at 6.

This Court finds that Mr. Lang's sentence is exactly the kind of "unusually long sentence" as is envisioned by the new Sentencing Guidelines as a basis for relief. The Defendant has already served more than 10 years. While the First Step Act did not make the changes to stacked 924(c) sentences retroactive, the 30-year difference in the sentence Mr. Lang received in 2006 and the sentence he would receive today constitutes a "gross disparity" that is worth remedying: they make the difference between him exiting prison as a man in his late middle age rather than at the end of his life.

The Government argues that *United States v. Escajeda* prevents relief to defendants like Mr. Lang because it limits compassionate release to cases in which a prisoner "face[s] some extraordinarily severe exigency not foreseeable at the time of sentencing, and unique to the life of the prisoner.'" 58 F.4th at 187. However, the Fifth Circuit decided *Escajeda* in January, three months before the Sentencing Commission submitted this year's amended Guidelines to Congress. Furthermore, the amended Guidelines clearly delineate the circumstances under which an unusually long sentence is a consideration "unique to" a particular defendant such that a district court may consider it as a basis for compassionate release: where a change in the law would

produce a gross disparity in the sentence being served and the sentence likely to be imposed now. As a result, the Government's argument is unavailing, because there is no conflict between *Escajeda* and the amended Sentencing Guidelines.

### 4.  *Section 3553(a) Factors*

A district court may deny relief to a defendant if, despite the existence of extraordinary and compelling reasons, the sentencing factors set forth in 18 U.S.C. § 3553(a) outweigh those reasons. *See* 18 U.S.C. § 3582(c)(1)(A). Having determined that extraordinary and compelling reasons exist that warrant a reduction in Mr. Lang's sentence, the Court must next consider the applicable factors set forth in section 3553(a) to determine whether a reduced sentence is appropriate and if so, what that sentence should be. These factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct;
> >
> > (C) to protect the public from further crimes of the defendant; and
> >
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and sentencing range [provided for in the U.S.S.G.]. . . .

(5) any pertinent [Sentencing Commission] policy statement...the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(6) the need to provide restitution to any victims of the offense.

*Id*. § 3553(a). These considerations are to be measured against the overarching principle that a sentence should be "sufficient, but not greater than necessary," to accomplish the goals of sentencing. *Id.*

Under the facts and circumstances of this case, the Court finds that the 70 year and 8 months sentence imposed on Mr. Lang is far more than necessary to fulfill the purposes of a criminal sentence. There is no doubt that his crimes were violent and endangered the lives of the victims. However, regarding concerns about "unwarranted sentencing disparities," Mr. Lang's original 848-month sentence is significantly higher than those given to defendants sentenced at present for similar or worse crimes.[1] In addition, Mr. Lang has provided evidence that he has undergone significant rehabilitation during his nearly 20 years of incarceration. He has completed thousands of hours of training and vocational programming, and he has not had an incident report for more than 10 years. The Government does not contest Mr. Lang's characterization of his record or accomplishments while incarcerated.

In addition, a reduced sentence will suitably provide just punishment for the offense and protect the public from further crimes by the defendant. Even with a reduction of the 924(c) stacked sentences, Mr. Lang will spend another 20 years in prison and will be released in late middle age.

---

[1] In 2021, the average sentence in federal courts for murder was 244 months nationally and 235 months in the Fifth Circuit; for kidnapping, 166 months nationally and 194 months in the Fifth Circuit; and for robbery, 104 months nationally and 125 months in the Fifth Circuit. United States Sentencing Commission, Statistical Information Packet, Fiscal Year 2021, Fifth Circuit, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2021/5c21.pdf

11

Standing alone, his age at release—59 years old—suggests a lower likelihood of recidivism. *See* United States Sentencing Commission, *The Effects of Aging on Recidivism Among Federal Offenders*, p. 30 (December 2017), available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf. ("Among offenders released younger than age 21, 67.6 percent were rearrested compared to 13.4 percent of those released age 65 or older. The pattern is consistent across age groups, as age increases recidivism by any measure declined. Older offenders who do recidivate do so later in the follow-up period, do so less frequently, and had less serious recidivism offenses on average.").

Given the specific circumstances of Mr. Lang's case, the 18 U.S.C. § 3553(a) factors weigh in favor of granting a reduction in his sentence.

## IV.    CONCLUSION

For the foregoing reasons, Defendant Lovelle Lang's motion to reduce sentence is **GRANTED**. His sentence of 660 months, or 55 years, for his three convictions under 18 U.S.C. 924(c) is **REDUCED** to a total of 300 months, or 25 years, to run consecutive to his 188-month sentence for Counts 1, 2, 5, 11, and 13, for a total sentence of 488 months, or 40 years and 8 months, with credit for time served and his accrued good time credits intact. All other terms and conditions previously imposed shall remain in effect.

New Orleans, Louisiana, this 15th day of September, 2023.

_____
United States District Judge

12